**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| LYNDA BARRERA, individually, | ) | 2:09-cv-02289-ECR-PAL |
| Plaintiff, | ) | |
| vs. | ) | **Order** |
| WESTERN UNITED INSURANCE COMPANY, dba AAA NEVADA INSURANCE COMPANY, a California corporation; DOES I through X, inclusive, | ) | |
| Defendant. | ) | |

This case arises out of an insurance dispute over an automobile accident. Now pending are several motions for summary judgment and a motion in limine.

### I. Background

On April 21, 2008, Plaintiff Lynda Barrera ("Plaintiff" or "Barrera") was involved in a hit-and-run motor vehicle accident with another vehicle. (Compl. Ex. A, ¶ 6 (#1).) Plaintiff had uninsured motorist coverage with her automobile insurer, Defendant AAA Nevada Insurance Company ("Defendant") (Ex. A (#85-1).) The other vehicle involved in Plaintiff's accident rear-ended Plaintiff's vehicle and fled the scene. (Compl. Ex. A, ¶ 7 (#1).)

Defendant was notified by Plaintiff's husband of the accident on April 21, 2008, and acknowledged receipt of Plaintiff's claim on April 23, 2008.  (Mot. Summ. J. All Claims at 5 (#85); Automobile Loss Notice Ex. B (#85-3).)  Plaintiff did not contact Defendant regarding her claim until June 11, 2008.  (Mot. Summ. J. All Claims at 6 (#85); Claim File Notes Ex. C, at 2 (#85-3).)  Plaintiff retained counsel on or around July 17, 2008.  (Correspondence July 16, 2008 Ex. E (#85-3).)  Plaintiff's counsel notified Defendant that Plaintiff is treating with physicians and medical records will be provided when they become available.  (Id.)

On July 18, 2008, Defendant acknowledged the letter from Plaintiff's counsel and requested the status of Plaintiff's medical condition, and requested that Plaintiff complete and return an enclosed medical authorization allowing Defendant to obtain medical records necessary to evaluate Plaintiff's claim.  (Correspondence July 18, 2008 Ex. F (#85-3).)  Plaintiff did not respond to Defendant's letter dated July 18, 2008.  (Mot. Summ. J. All Claims at 6 (#85).)  On October 7, 2008, Defendant called Plaintiff's attorney's office and spoke to Plaintiff's attorney's paralegal, who communicated that Plaintiff's counsel would contact Defendant regarding Plaintiff's medical condition.  (Claim File Notes Ex. C, at 3 (#85-3).)  On October 16, 2008, Plaintiff's counsel contacted Defendant but did not provide any medical records or an executed medical authorization.  (Id.)

Defendant again requested medical records and an authorization on November 14, 2008, and February 13, 2009, but Plaintiff's counsel failed to respond between October 16, 2008 and March 10, 2009.

2

1  (Correspondence Nov. 14, 2008 Ex. H (#85-4); Correspondence Feb. 13,
2  2009 Ex. I (#85-4).)  On March 10, 2009, Defendant contacted
3  Plaintiff's counsel's office by telephone and spoke to Plaintiff's
4  counsel's paralegal, who advised Defendant that Plaintiff's counsel
5  was unavailable.  (Mot. Summ. J. All Claims at 7 (#85).)  Following
6  the telephone call, on March 10, 2009, Defendant sent correspondence
7  to Plaintiff's counsel requesting that Plaintiff execute an enclosed
8  medical authorization and provide a list of medical treatment
9  providers.  (Correspondence March 10, 2009 Ex. J (#85-4).)
10 Defendant contacted Plaintiff's counsel's office by telephone again
11 on March 18, 2009 and April 24, 2009, but was not provided with an
12 executed medical authorization.  (Claim File Notes Ex. C, at 9 (#85-
13 3).)
14      On June 12, 2009, Plaintiff's counsel sent correspondence
15 constituting a policy limit demand for $100,000.00 that purported to
16 stay open for ten days from the postmarked date of the letter.
17 (Correspondence June 12, 2009 Ex. K (#85-4).)  Plaintiff's attorney
18 stated that Plaintiff had sustained injuries to her neck, back,
19 cervical spine, thoracic spine, left shoulder, and lumbar spine.
20 (Id.)  Some medical records were included in the correspondence.
21 (Id.)  The provided medical records indicated that Plaintiff had
22 been treated for shoulder pain prior to the accident, and also
23 indicated that Plaintiff had treated with several medical providers
24 whose records were not included in Plaintiff's counsel's
25 correspondence.  (Mot. Summ. J. All Claims at 7 (#85).)  Plaintiff's
26 counsel included a medical summary stating that Plaintiff's medical
27 expenses totaled $37,199.40.  (Id.)  Defendant evaluated the
28
                                 3

available information, but was unable to fully evaluate Plaintiff's claim because Plaintiff had not provided a medical authorization or all of her medical records.  (Claim File Notes Ex. C at 6 (#85-3).) On June 18, 2009, Defendant sent Plaintiff's counsel correspondence explaining that additional information was necessary to evaluate Plaintiff's claim, and explaining why it was necessary to obtain medical records from Plaintiff's current and former medical treatment providers. (Correspondence June 18, 2009 Ex. L (#85-4).) Defendant again requested an executed medical authorization as well as a list of current and prior medical providers.  (Id.)  Defendant also reserved its right to require an independent medical examination ("IME").  (Id.)

After receiving no response to its letter dated June 18, 2009, Defendant sent another letter on July 9, 2009, reiterating its position.  (Correspondence July 9, 2009 Ex. M (#85-4).)  On that date, Defendant finally received an executed medical authorization. (Correspondence and Authorization July 9, 2009 Ex. N (#85-4).) However, the medical authorization did not list or specify Plaintiff's medical treatment providers.  (Id.)  On August 4, 2009, Defendant requested medical records and bills via the medical authorization.  (Claim File Notes Ex. C at 6-7 (#85-3).)

On October 2, 2009, Plaintiff's counsel demanded a settlement offer by the end of the day based on the information made available to Defendant.  (Claim File Notes Ex. C at 7-8 (#85-3.)  At that time, Defendant had not yet received all of the medical records and bills, including those related to Plaintiff's shoulder injury and surgery.  (Id.)  Defendant offered $5,000 to settle the claim based

4

on the available information because of Plaintiff's counsel's insistence, but also advised Plaintiff's counsel that additional investigation and information was necessary to fully evaluate the claim. (Id.)  Defendant communicated that it had not yet received all of the medical records for Plaintiff's claim. (Id.) Plaintiff's counsel rejected the offer on October 5, 2009 and indicated that he would be filing a lawsuit. (Id.)

On October 22, 2009, Plaintiff filed the lawsuit against Defendant in state court. (Compl. Ex. A (#1).)  Plaintiff brought claims for (1) breach of contract, (2) violation of the Unfair Claims Practices Act, and (3) bad faith.  On December 2, 2009, Defendant removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal (#1).)

Several motions for summary judgment and a motion in limine were filed.

## II. Motion for Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable

5

jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171(1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  FED. R. CIV. P. 56(c); <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof.  <u>Anderson</u>, 477 U.S. at 248.  Summary judgment is not proper if material factual issues exist for trial.  <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir.

6

1  1999).  "As to materiality, only disputes over facts that might
2  affect the outcome of the suit under the governing law will properly
3  preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.
4  Disputes over irrelevant or unnecessary facts should not be
5  considered.  Id.  Where there is a complete failure of proof on an
6  essential element of the nonmoving party's case, all other facts
7  become immaterial, and the moving party is entitled to judgment as a
8  matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a
9  disfavored procedural shortcut, but rather an integral part of the
10 federal rules as a whole.  Id.

**III. Defendant's Motion for Summary Judgment on All Claims (#85)**

Defendant argues that Plaintiff's claims should be dismissed because Plaintiff violated conditions precedent to coverage prior to filing suit, which Defendant argues is a breach of the insurance policy.  Defendant objects to Plaintiff's delay in providing medical records and an executed medical authorization, and Plaintiff's abrupt filing of a lawsuit without giving Defendant a reasonable amount of time to evaluate Plaintiff's claim.

An insurance policy is a contract between a policyholder and an insurer in which the policyholder agrees to pay premiums in exchange for "financial protection from foreseeable, yet unpreventable, events."  Benchmark Ins. Co. v. Sparks, 254 P.3d 617, 620 (Nev. 2011).  Both parties are bound by the terms of the policy.  Id. Plaintiff's insurance policy provides that a person claiming coverage "must cooperate with [Defendant] in the investigation, settlement or defense of any claim or lawsuit," and "authorize

7

[Defendant] to obtain medical, employment, and other pertinent records, and allow [Defendant] to discuss the injury or impairment with any medical provider or employer." (Barrera Insurance Policy Ex. A, at 3-4 (#85-1).) The policy provides that the company will not pay damages until there has been compliance with all policy provisions. (Id. at 19.) Finally, the policy provides that "[Defendant] may not be sued unless there is full compliance with all the terms of the policy." (Id. at 49.)

Defendants cite to a case in which the court determined that the insured is not entitled to any additional benefits under the uninsured motorist policy due to her refusal to submit to a request for an IME, coupled with an immediate filing of a lawsuit.[1] Schwartz v. State Farm Mut. Auto. Ins. Co., No. 2:07-cv-00060-KJD-LRL, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009). "Nevada law clearly enforces coverage conditions, and precludes coverage irrespective of whether there is any prejudice to the carrier." Id. While Defendant argues that prejudice is not required under Nevada law, it states that it has suffered prejudice by having to defend against a lawsuit filed in breach of the terms of Plaintiff's insurance policy.

Plaintiff does not dispute that Defendant made numerous requests for medical records or authorizations for over a year after Plaintiff's accident. Defendant became aware of Plaintiff's claim on April 21, 2008, and did not receive an executed medical

---

[1] The court's decision in Schwartz was based on Plaintiff's failure to prove her damages, and in the alternative, Plaintiff's refusal to cooperate with the insurance company.

authorization until July 9, 2009.  The medical authorization provided in July 2009 did not include a list of Plaintiff's medical treatment providers.  Defendant requested the medical records on August 4, 2009, and was still in the process of receiving and evaluating Plaintiff's medical records when Plaintiff's counsel demanded a settlement offer by the end of the day on October 2, 2009.  Defendant states that it had not yet received all of the medical records and bills at that time, and had questions about Plaintiff's injuries that precluded determining her coverage amount. When Defendant offered a $5,000 settlement offer based on the information available during the short period of time Plaintiff's counsel allotted to Defendant, Defendant qualified the offer by stating that additional investigation and information were necessary to fully evaluate the claim.  The offer was rejected and Plaintiff's counsel filed suit.

   Plaintiff opposes Defendant's motion for summary judgment on all claims on the basis that Defendant's policy adjuster indicated that Defendant would pay for all of Plaintiff's medical bills, and that Plaintiff would be better off sending Defendant all her bills and records at one time after completed treatment.  (Opp'n. at 3-4 (#98).)  Plaintiff's allegations are insufficient as a response to Defendant's clear evidence that Defendant continuously requested medical records and authorization, and Plaintiff delayed providing them.  Plaintiff does not, and cannot, dispute that the delay in this case is largely a result of Plaintiff's own actions.  Plaintiff also states that Defendant unreasonably delayed requesting Plaintiff's medical records after being provided a medical

9

authorization, and delayed evaluating Plaintiff's claim.  (Id. at 4.)  In light of the undisputed evidence that Plaintiff delayed over a year in providing the requested medical authorization, and never provided a complete list of medical providers as requested, Defendant's request of the medical records a month after receiving the medical authorization does not seem unreasonable to the Court. Nor can Plaintiff dispute Defendant's evidence that Defendant clearly communicated that it had not yet received all of Plaintiff's medical records when Plaintiff unilaterally demanded a settlement offer by the end of day in October of 2009.  Plaintiff's filing of a lawsuit after the settlement offer, despite Defendant's explanation that Defendant had been unable to fully evaluate Plaintiff's claim due to the delays in being provided the requested information, appears to be a breach of the terms of Plaintiff's insurance policy, namely, the provision that prohibits the filing of a lawsuit until there has been full compliance with the terms of the policy, including full cooperation in the investigation and evaluation of a claim.

However, the facts of this case are not as severe as those in Schwartz, where the insured flatly refused to submit to an IME. While we find that Plaintiff has not fully cooperated in the spirit of the insurance policy prohibiting lawsuits before full compliance, we decline to grant summary judgment on all claims on the basis that Plaintiff breached the cooperation clause because Plaintiff did, if after a long delay, provide a medical authorization.  Granting summary judgment on all her claims, including her first claim for breach of contract, would deny Plaintiff coverage of her insurance

10

claim entirely, a remedy that we find may be too harsh under the facts of this case.[2]

## IV. Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim (#59)

On March 9, 2011, Defendant filed a motion (#59) seeking summary judgment on Plaintiff's claim for punitive damages. On March 31, 2011, Plaintiff opposed (#78), and on April 18, 2011, Defendant replied (#89). Defendant requests summary judgment on the basis that Plaintiff has produced no evidence in support of her punitive damages claim.

The evidence produced in this case is in Defendant's favor. Plaintiff cannot dispute that Defendant was not provided with the medical records and authorization necessary to analyze her claim for over a year after the accident at issue. Nor can Plaintiff deny that merely a few months after providing Defendant with incomplete information, Plaintiff demanded a settlement offer by the end of day, and then filed suit when the settlement offer was unsatisfactory, despite Defendant's protests that additional investigation of Plaintiff's claim was necessary.

---

[2] However, we caution that as a general rule, policyholders are required to comply with the terms of the insurance policy in order to reap the benefits of the contract. The Court found this a very close case, but determined that because Plaintiff's filing of a lawsuit was not clearly a breach of the policy in the way that refusing to submit to an IME or refusing to provide medical records would be, and because Plaintiff set forth some evidence that she was directed to provide her medical records at the end of her treatment rather than during treatment, Plaintiff should not be denied recovery altogether on her claims.

11

The facts of this case do not support a claim of bad faith on the part of Defendant.  In fact, as discussed above, there are questions regarding the propriety of Plaintiff's actions and her own compliance with the terms of the insurance policy.  Defendant's Motion (#59) shall be granted on that basis, and Plaintiff's claim for punitive damages shall be dismissed.

## V. Defendant's Motion for Summary Judgment on Plaintiff's Second and Third Causes of Action (#84)

On April 12, 2011, Defendant filed a "Motion for Summary Judgment on Plaintiff's Second and Third Causes of Action" (#84). On May 6, 2011, Plaintiff opposed (#96), and on May 23, 2011, Defendant replied (#103).  Defendant requests that we grant summary judgment on Plaintiff's bad faith claims because there is no genuine issue of material fact over those claims.

As discussed above, Plaintiff cannot dispute that she delayed providing the requested medical authorization and records for over a year after the accident at issue, despite numerous requests by Defendant for such information.  Because Plaintiff did not provide the information in a timely manner, and then demanded a settlement offer before Defendant could properly evaluate the partial information provided by Plaintiff, Plaintiff is responsible for the delay experienced in handling her claim.  Plaintiff has not shown any evidence that Defendant unreasonably delayed handling her claim, nor can Plaintiff credibly argue that Defendant violated any statutes requiring the prompt and equitable settlement of insurance claims.  Defendant was not given the opportunity to evaluate

12

Plaintiff's claim fully before Plaintiff filed suit. Because any delay in the settlement of her claim results from her actions, and because Plaintiff herself cut off Defendant from being able to evaluate and settle her claim before this action was filed, Defendant's Motion (#84) for summary judgment on Plaintiff's second and third causes of action shall be granted.

## VI. Defendant's Motion for Summary Judgment on Plaintiff's Claim for Compensatory Damages for Emotional Distress or Financial Hardship (#83)

On April 12, 2011, Defendant filed a "Motion for Summary Judgment on Plaintiff's Claim for Compensatory Damages for Emotional Distress or Financial Hardship" (#83). On May 6, 2011, Plaintiff filed her opposition (#97). On May 23, 2011, Defendant filed a reply (#102). Defendant requests that we grant summary judgment on Plaintiff's claims for compensatory damages for emotional distress and financial hardship because Plaintiff has set forth no evidence of such damages, and has in fact affirmatively denied having suffered those damages.

At her deposition, Plaintiff was asked:

Q: Do you allege any emotional distress as a result of AAA's actions related to your claim?

A: No.

(Dep. Lynda Barrera Ex. A, at 121:22-24 (#102-1).)

Furthermore, Plaintiff also testified that she has not been put into any financial hardship as a result of the accident or Defendant's actions.

1     Q: So the accident itself, though, hasn't put you in any sort
2 of financial constraint?
3     A: No, the accident itself has not.
4     (Dep. Lynda Barrera Ex. A, at 118:4-6 (#102-1).)
5     Q: Well, I guess this is the easy way to ask it.  Are you
6 claiming that as a result of the accident and AAA not paying the
7 policy limits, that you've been put in any sort of financial
8 hardship?
9     A: None.
10     (Dep. Lynda Barrera Ex. A, at 119:10-14 (#102-1).)
11     In response to Defendant's argument, Plaintiff fails to set
12 forth any evidence contradicting Defendant's assertion that
13 Plaintiff has failed to show any evidence of emotional distress or
14 financial hardship.  Plaintiff merely argues that the deposition
15 questions were confusing and/or unclear, and that emotional distress
16 and financial hardship are elements of her claims.  Plaintiff does
17 not provide any affidavit or additional evidence showing that there
18 is a genuine issue of material fact over whether she suffered such
19 damages.  Not only did Plaintiff fail to show evidence of emotional
20 distress or financial hardship, Defendant has provided evidence,
21 directly from Plaintiff's deposition, that Plaintiff has not
22 suffered any emotional distress or financial hardship as a result of
23 Defendant's actions.  Defendant's Motion (#83) shall, therefore, be
24 granted.
25 ///
26 ///
27
28

<div style="text-align:center">14</div>

<small>Case 2:09-cv-02289-JAD-PAL   Document 106   Filed 02/02/12   Page 15 of 18</small>

**VII. Defendant's Motion for Summary Judgment (#74) and Motion in Limine (#75) as to Plaintiff's Request for Attorneys' Fees**

On March 23, 2011, Defendant filed a Motion for Summary Judgment as to Plaintiff's Request for Attorneys' Fees (#74). On April 15, 2011, Plaintiff opposed (#87). On May 2, 2011, Defendant filed its reply (#95). Defendant requests that we grant summary judgment on Plaintiff's claim for attorney's fees because Plaintiff failed to disclose evidence regarding the attorney fee agreement during discovery. Defendant contends that this is a violation of Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which provides that a party must provide "a computation of each category of damages claimed by the disclosing party." Federal Rule of Civil Procedure 37 provides that if a party fails to provide information required by Rule 26(a), the party is not allowed to use that information to supply evidence on a motion, at a hearing, or at trial. The court may, alternatively, order payment of the reasonable expenses, including attorney's fees, caused by the failure to comply with Rule 26.

The discovery cutoff deadline in this case was March 14, 2011. Plaintiff responds that in accordance with Magistrate Judge Leen's order that Plaintiff disclose her counsel's billing records in support of her claim for special damages, Plaintiff disclosed the billing records on March 24, 2011, within the time period allotted by Magistrate Judge Leen. Plaintiff asserts in her opposition (#87) that she has a contingency fee agreement with her attorney.

Defendant argues that Plaintiff's disclosure was still untimely because it was provided after the discovery cut-off date, and that a

15

contingency fee agreement with counsel is not a proper category of consequential damages.  The Court finds that Plaintiff's compliance with the Magistrate Judge's order is sufficient to meet the requirements of Federal Rule of Civil Procedure 26, and that the issue of whether Plaintiff is or is not entitled to attorney's fees under her contingency fee agreement is premature, and therefore, Defendant's Motion for Summary Judgment as to Plaintiff's Request for Attorneys' Fees (#74) shall be denied.

On March 23, 2011, Defendant also filed a "Motion in Limine to Exclude Plaintiff's Request for Attorneys' Fees and to Preclude Any Reference to And/Or Evidence of the Same At Trial" (#75). The Motion (#75) duplicates many of the arguments made in Defendant's Motion (#74).  Therefore, the Motion (#75) shall be denied for the reasons stated above, being without merit and/or premature at this stage in the action.

### VIII. Defendant's Motion for Summary Judgment Regarding Nevada Law On Partial Payments (#52)

On March 3, 2011, Defendant filed a "Motion for Summary Judgment as to Any Alleged Claims that Nevada Law Requires Defendant, an Insurer, to Make Partial Payments in a UM Claim" (#52).  On March 25, 2011, Plaintiff opposed (#76), and on April 11, 2011, Defendant replied (#81).  Defendant requests that we grant summary judgment on Plaintiff's allegation that Nevada law requires partial payments in an under/uninsured motorist claim.

Plaintiff alleges that Nevada Revised Statute § 686A.310 requires partial payments.  Section 686A.310 provides:

16

> Except for a claim involving health insurance, any case involving a claim in which there is a dispute over any portion of the insurance policy coverage, payment for the portion or portions not in dispute must be made notwithstanding the existence of the dispute where payment can be made without prejudice to any interested party.

Plaintiff also argues that Nevada Administrative Code § 686A.675(7), which contains identical language to the language contained in Nevada Revised Statute § 686A.310, also requires Defendant to make partial payment on Plaintiff's claim.

Defendant argues that these provisions state that an insurer cannot hold payment under one section of a policy such as property damage, while attempting to influence resolution of another portion such as bodily injury. The plain language of the statute is in accordance with Defendant's reading. Plaintiff has not provided any evidence which would persuade the Court that Nevada law requires Defendant to make partial payments before fully evaluating Plaintiff's claim. Defendant's Motion (#52) shall, therefore, be granted.

## IX. Conclusion

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant's Motion for Summary Judgment on All Claims (#85) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim (#59) is **GRANTED**. Plaintiff's claim for punitive damages is dismissed with prejudice.

17

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Second and Third Causes of Action (#84) is **GRANTED**.  Plaintiff's claims for breach of the Unfair Claims Practice Act and for bad faith are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Claim for Compensatory Damages for Emotional Distress or Financial Hardship (#83) is **GRANTED**. Plaintiff will not be allowed to recover damages for emotional distress or financial hardship.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Plaintiff's Request for Attorneys' Fees (#74) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude Plaintiff's Request for Attorneys' Fees and to Preclude any Reference to and/or Evidence of the Same at Trial (#75) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Any Alleged Claims that Nevada Law Requires Defendant, an Insurer, to Make Partial Payments in a UM Claim" (#52) is **GRANTED**.

DATED: February 2, 2012.

_Edward C. Reed_
UNITED STATES DISTRICT JUDGE